Good morning, Your Honor. Good morning. You may proceed. Thank you, Your Honor. Today, I plead the court. My name is Brad Banas and I represent the petitioner in this case. A reasonable fact finder will be compelled to conclude that Ms. Funez's familial ties to the perceived owner of the apartment building is inextricably intertwined with the persecutor's belief that she had the power to evict him because her familial tie is why he singled her out from the other neighbors in the building, the other folks in the town, the other folks in the country. For that reason, this court should vacate this decision and remand it to the agency for further proceedings. This is not a new issue in front of this court. This court has spoken often and consistently on what it takes to show a nexus for a social group that comprises a familial relationship. And I think three cases here in particular point towards a defining factor that would indicate that a familial relationship is at least a central reason for the persecution. And that is whether the family relationship explains why the persecutor singled out this individual from other members of the population of the city. And that satisfies the nexus requirement. So Judge Harris wrote an opinion last year, Cedillo-Cedillos, that kind of goes through two other cases. Those two cases are Hernandez-Avalos and Cantillano-Cruz. And in Hernandez-Avalos, the question was whether the maternal relationship or whether the mother's distaste for her son to join a gang was the central reason. The court said the familial relationship is why she, not another person, was threatened by the gang members. It was why she was singled out versus other people who opposed the gangs. And that was deemed sufficient for a nexus to a social group comprising a family. Similar in Cantillano-Cruz, that it was a wife, whether it was because she was the wife of the deceased or whether because she said she was going to contact the police. The court there said, well, the BIA erred because they ignored the reason that prompted her to go and talk to the persecutor, to threaten to talk to the police. That familial relationship is why the persecutor singled her out from other people who knew he was running drugs. What are we reviewing here? Are we reviewing the immigration judge's decision or the board or both? Your Honor, here the board didn't really provide any additional analysis to the immigration judge's decision. So while you are reviewing both, I believe the main substance is here at the immigration judge's decision. And it's clear from his oral order. So you don't believe that the immigration board here supplemented the decision of the immigration judge? I do not, Your Honor. I believe they described the rationale of the immigration judge, but they didn't provide any additional fact findings or legal analysis that were material to their affirmance of the immigration judge's decision. And the immigration judge here said very clearly, the court simply cannot find that there is any direct or circumstantial evidence in this case that would indicate the respondent was being the owner of the building. In the record, there's at least eight occasions where we cite Narbree. She explained to the immigration judge at least four times in answers that he was coming after her because he believed that she was related to the owner. And this distinguishes this greatly from Judge Harris, your decision in Cedillo, Cedillo, where you went through those two cases I just mentioned, Your Honor. And you said here, in that case, the brother witnessed the beating of his brother, walked up on the street, saw it, and then the gang members who did the beating kind of came after him. But they never mentioned the brother, the family relationship. They didn't go to the family's home, even though it was in the same town, they knew where it was, and they never contacted another family member. Simply said... Counselor, let me ask you a question. I'm sorry. I do remember that case well. Assuming just hypothetically that I agree that it looks like that first encounter where he actually says to your client, they tell me you're going to decide who lives there because you're related to the owners. So if that's what's said, just assume hypothetically that I think under the cases you're talking about, then that first, one central reason for that first approach was the familial relationship. But that first approach, I think you need to show more to prove persecution because that first approach by itself, I don't think rises to the level of persecution. There's no threat, there's no violence, he just says it. So it appears to me at least, and you tell me if I'm wrong, that you're going to need to show that the later approaches, which do escalate to the level of death threats, are also motivated in significant part by this family relationship. And what is the evidence of that? Yes, Your Honor. I do believe that there's two different questions here. Whether she suffered persecution, which the immigration judge seems to assume, and then what was the motivation of the persecutor? I believe there's ample evidence in the record that is deemed credible, that is uncontested, that the motivation of Oscar, the persecutor, why he went after her was because he believed she could evict him. And that's consistent throughout. But the I.J. seemed puzzled by the fact that even after she moves out of the building, like this is going on forever, and the I.J. seemed to think that it was almost not credible that this would escalate to death threats like a year later after she's moved out of the building. Is that a separate question, do you think? Or is it enough if you establish that the first contact was motivated, if the record compels a finding that the very first contact was motivated by the family relationship, are we just supposed to presume that every other contact, that motive holds steady throughout the entire course of events? So two points. I don't think there's any evidence that his motivation would have changed. I think the evidence that the immigration judge pointed out that he was confused why Oscar would continue to persecute her, even though she left the building, is explained by her answers. Well, he thought I was a family of the owner and that I could get him evicted. And that motivation and that immutable fact remains true whether she lives in the building or whether she doesn't. The second thing is, and I think this is where the board had an issue, is that the immigration judge's incredulity is not evidence. He also at one point says, I think there's something else on here. This seems suspicious. But he also deemed her testimony credible, uncontested, and wholly reliable. And that is a legal finding. His incredulity and suspicions that something else is going on have no part in the analysis of whether she suffered persecution and whether it was caused by an intertwined reason that he believed, that Oscar believed she could evict him. And the only reason that he would want to persecute her for that is if she had the power to do it and that power came from her family relationship. That's why she was singled out from other neighbors who didn't want a criminal in their building or other people in the town who didn't want him in the town. That explains it. And the immigration judge's transcript here is incredibly telling. I mean, he asks, I'm looking at the record of page 128. Your best guess is he heard rumors you were trying to influence the owner of the building to get you out. So he's characterizing his questions in terms of influence, right? And Ms. Funes says, because he didn't think that I wanted to influence the owners, but that I was the relative of the owners. She goes back to that at least four times during the judge's questioning of her. She says, the reason he was coming after me is family. And there's no indication that that motivation changed from the first meeting to the And in fact, I would suggest that's the only explanation, the rational explanation, the inescapable conclusion of why he continued to harass her. Because regardless of whether she lives in the building or not, she still holds the power to evict him because she's family of the owners. And the immigration judge's stated reasons why he didn't agree with this is one, Oscar was never evicted. And somehow that would play into his motivation. I would suggest that's a non sequitur. It doesn't play in any part of this analysis. The immigration judge also said, well, she wasn't actually related to the owner, right? The owner was some person in the United States, and her cousin-in-law was just the super or the, you know, landlord, so to speak. And I would suggest that that doesn't matter. What matters is Oscar's motivation here. He perceived- Develop that a bit for some, you use the term intertwined in terms of a clatterus here. What's the, you use the term one of our colleagues used from time, what's the limiting principle there? If you can, I mean, where does it begin? Where does it end? And is it a status that one acquires, as Judge Harris seems to want to question you about? What are we dealing with or can we separate out the events here? Given that there is a significant event that occurs, she moves out. She's not even there. That's right, Your Honor. And I think that's incredibly strong evidence to show the intertwining, if you will, of the familial relationship and this perceived power to evict. I do think intertwining has limiting principles, Your Honor. I do think that the familial relationship has to play some sort of piece in the syllogism explaining the persecutor's motives. And here, if you separate out the familial relationship from the desire for a criminal not to live in a building, you know, how do I say this? I used to live in apartment buildings in D.C. where I didn't like some of my neighbors, but they didn't care because I didn't have any power to have them removed. If they knew I was the landlord or related to the landlord or, you know, had power to have them evicted, it may be nicer to me, right? They may want to turn their radio down. They may not stop. Would they have to know that, that you are related, know that you have power, or would they just have to believe it? I believe that they would have to, the motivation for whatever actions they took, would have to be informed by that concept. And that's, that's the factual error that is made here. The record compels. And Your Honor, I would just say that the counterpoint case is Cedillo-Cedillo's, where there was no dispute that Mr. Cedillo's brother was the one who was murdered and that he was the witness to that murder. But the motive of the murderers in that case, they had no idea. And there was no circumstantial or direct evidence that they just murdered, you know, the persecutee's brother. And so there's no place in the syllogism describing their motivation where familial relationships are a necessary step. And I think that's the big difference. That's, I described at the beginning is, it's the reason that explains why this individual over others are being singled out. Ms. Funes was perceived as the family of the owner of the building. And whether that person is the, you know, the owner on the deed or not, did not change the motivation of the persecutor, which is what this is all about, right? When you go back to Elias Zacharias, that's what we're looking for, direct or circumstantial evidence of why this persecutor persecuted Ms. Funes. Mr. Bennis, your client also collected rent, didn't she? Yes, Your Honor. How do you think that factors in, and I think Judge Wynn and I know that too, you said intertwine, and that is, if you're not paying rent, then you may be wary of anyone who's a rent collector because that's the person who knows you're not paying your rent. You may be hanging with them, right? That's right, Your Honor. And I would describe, you know, a lot of these opinions speak of direct and circumstantial evidence. The eight points that I pointed out in the record, those are direct evidence, but there's also circumstantial evidence of why people would perceive her as essentially a analog to the owner because she was family. One is- You mentioned the word syllogism, almost a but-for. Anybody who shows up as a collector of rent would be the subject of his hire, wouldn't it? I think so, Your Honor. Yes. Well, then how is it a central function here or factor that she's related when it's so sort of overwhelmingly, you know, you're not paying rent, that's the person you're going to deduct the rent collector or intimidate. And apparently in this record, he chose to intimidate. But is that really the reason because she's related to it or because she's collecting rent? Your Honor, I think it's a different case if you're just the rent collector. Here, we have direct evidence that he said, you're going to- you can evict me because you're related to the owner. So there's no question there. If it was just someone coming from outside and coming to collect the rent, they would not be claiming a membership in a particular social group as a family, right? And so they would have different issues here. So yes, when Judge Wynne asks, I do think the persecutor has to have knowledge that this person is a member of the family. But the point of the question is this. If they were family, that's a different position. But the question is, what motivates the persecutor? But would the persecution's motivation be any different? If it's a non- no matter who it is, is it family? Is that just a coincident or is it really a central part? That is, whoever shows up and collects the rent is the person I need, like I said, to duck or intimidate because I'm not paying my rent. So what I'm talking about, is a sort of a causal effect. How do you answer that? Yes, Your Honor. I think you are identifying the line that Judge Wynne was asking about. In your hypothetical, the only motive that's from the facts you gave would be, I don't want to pay rent and I'm going to persecute you because I don't want to pay rent. Okay? Right. If that person and the persecutor knows that person is a family of the owner demanding the rent, then it's going to be incredibly difficult to separate those two things. Right? Because if you know the owner is a separate person and this is just the rent collector, you're going to see influence having that family relationship. But it doesn't matter. If I'm the rent collector, I have a business relationship with whoever is entitled to the rent. I'm always going to be connected to the person. I don't have to be his or her cousin or brother or sister. In other words, I get the rent, I have to give it to them. I'm going to go back and say, they're going to say, where's my rent money? Because he didn't pay. Family has nothing to do with it. It really doesn't. He's going to be happy. He has to do something because Oscar is not paying the rent and he refuses to leave. And there's a rent collector. Like I said, there's only one way to do it. Either you're going to duck them permanently or you're going to do something to intimidate them and say, listen, I'm not going to pay the rent and I'm going to do something to you if you try to collect me or whatever. You're saying the additional fact that there's a familiar connection with the owner is central. But isn't it rather overwhelming that the target is because you're the rent collector? Now, if she didn't collect rent at all, then you would say, no, I think you may be connected because you might know him or her and can tell them about me. But you are the rent collector. You have a position of authority like in any business, don't you? Your Honor, just a short answer. There's no evidence here that Oscar didn't pay rent. That's not the claim. That makes sense that he wouldn't be because I thought it was about, oh, I see, because of his establishment. Right. There's no evidence in the record that he believed that she would evict him because he didn't pay rent. There's nothing like that. She wanted him out of the building and she could make that happen because she was family with the owner. All right. Good point. Another point, too, is that after she left, of course, you have evidence that he still followed her after the rent collecting position was over. That's right, Your Honor. And again, while the immigration judge agrees, I think, and he was, again, incredulous about why that would happen, I think the only inescapable conclusion that must be compelled is that he believed that family relationship continued wherever she lived and she had that power over him. For that reason, we would ask this court to vacate the remand. Thank you. All right. Thank you, Mr. Banas. Mr. Tennyson. Good morning. May it please the court, Robert Tennyson for the government. Very quickly, again, this is a substantial evidence case. This is about whether or not the record compels the determination that she was being targeted on the basis of family. Now, there's some indication as Judge Harris- Counsel, can I just stop you right there? Yes, Your Honor. Because I'm wondering whether that is the only thing this case is about. What if, hypothetically, I thought two things, and truly hypothetically, this is a tricky case, but if I thought that the way the agency analyzed the nexus requirement was wrong, but I also thought the evidence didn't compel a finding one way or the other, wouldn't I then remand? I don't see why it has to be about whether the evidence compels a finding in favor of the petitioner. I don't think it's whether substantial evidence compels a determination with regard to motivation. If you find that that motivation, the immigration judge's determination of motivation, that no reasonable fact finder could find that way, then that's over. If you do find that a reasonable fact finder, that it must be the case that Ms. Funes was targeted because of her family, then this case is over. It goes back to the immigration court. It goes back to the board, obviously, because this court's determinations on nexus would compel that result in its series of cases since Cordova. I don't think I fully answered your question. Maybe I didn't understand it. No. My hypothetical will become increasingly elaborate, but it remains a hypothetical. What if I think it looks pretty clear from this record that at least some part of what went on here had to do with her family relationship, but it is not as obvious to me from this record that everything that happened had to do with the family relationship. It looks to me like what the agency held was nothing had anything to do with the family relationship. Hypothetically, I think that's wrong. Hypothetically, it's not obvious to me how this case actually should come out once the agency acknowledges some part of this had something to do with her family relationship. I think I get this now. We've got the July 15th conversation and the interaction where Oscar says, you're going to have me evicted, and the reason why you can't have me evicted is because you're a relative of the owner. Afterwards, there's no indication whatsoever where he ever speaks about that relationship to the owner again. If this court were to say, look, that incident compels a finding that at that time, the motivation was family. Are you in agreement that insofar as that first encounter in which he says because of the family and she responds that that first one by itself would give you the basis for a familial relationship being found? Two things. I think first, she disabuses Oscar of that notion immediately. She says, that's not true. Let's see. Does that matter that she disabuses him of something if he is in a mistaken belief that it is so? I think because of the way in which this encounter seems to take place, yes. Because remember, he originally just stops her and asks her, hey, is it true that you were trying to get me out? Then she says, no. Then the implicit threat doesn't come at all until the very end. He says, well, I'm going to stay here anyway, and you can't. There's no indication at that point that there's a tie to anything related to persecution. Until the end of that conversation, you don't get there. That's the first point I would want to make. If this is the case, the court says, look, that first encounter, he is motivated to start the encounter because of that point. From that point on, your proposition from that point on is, even though it was there, the subsequent events was not for that basis. Is that basically the way you see it? If the stop was for that reason, then the subsequent, and it seems to be that's right, then everything after that was not. A reasonable fact finder could find that to be the case. It's not compelled that everything after that was based upon that determination. Why would he, at least in addressing Judge Harrison's question, and the question whether there could be a part of it could be, why would he pursue her after she's gone? Why her? Once on this, she's no longer even there. As I understand, she's in a different area, you know, not even a part of it. What's the connection? At least a part of it. Why would it be that you could determine that there's no way in the world it comes from the familiar relationship? Right. It's a plausible response. This is what the immigration judge found. That after that first encounter, it's mainly that he doesn't like the fact that she wants him out. That he keeps hearing these rumors that she wants him out. And that, at least with regard, in the second incident, again, he conveys this, you want me out, right? But he doesn't bring up the relationship to the owners again in that second encounter. In the third encounter, he just slaps her. She asks why, and he goes, no problem, and wanders off. It looks like at some point, he just doesn't like her. And that he's attempting to get some sort of, and this is what the immigration judge finds, he doesn't like her because she seems to be resisting his desire to stay there and to stay there with her other members of the rationale. It's no longer, you can evict me, or you have the power to evict me because of your relationship. It's, you're trying to get me out of here somehow, and I don't like that, and I am coming after you. And that's a plausible reading of these facts. It may not be the reading, the best reading. It may not be the reading that this court would take of these facts. But as long as it's a plausible one, a reasonable one, I think the immigration judge's determination as to how this breaks down has to be upheld as supported by substantial evidence. I want to go back to a point that Judge Gregory made. So let me ask, before you leave, you pointed out he didn't like her or something of that nature, which means it took it to a different place. Is that what the BIA relied on? So the BIA relied on this one little fragment of what the immigration judge said was his rationale for why he came to conclude that he's after her at a certain point because he dislikes her. And that is that early mistaken belief, which seems like it, it does seem like there is a is the owner of the building. And that she somehow has some control because, some influence because of that. And the board's response is, well, it highlights the fact that he's motivated by, at least at that point, this mistaken belief that she can have him evicted, including this mistaken belief that he is somehow, that she is somehow related to the owners, which she wasn't. I would say the board is not being particularly artful here. The board statement does seem to say something, seems to indicate something along the lines, if you read it superficially, along the lines of, well, a mistaken belief in family is therefore not a basis, a nexus basis. And if that's the case, that's wrong. But this court under Ming Dai and, I guess, Bowen Transport, if there's a clear, even if the agency's decision is inartful, even if the board's decision here is inartful, as long as there's a clear path to figuring out what they're doing, and here it's what the immigration judge said, they're trying to bolster, under Bourbon, what the immigration judge found, that as long as that clear path is there, this court has to uphold the agency's decision. So I think, you know, Judge Nguyen, you make a really good point. I do think that Ming Dai and I do think that Bowen Transport require this court to sort of see that throwaway line by the line in the context of what the immigration judge said. Judge Harris. I really think this is the heart of the case, which is why I started with my first question. So, okay, I think it's great we're in agreement the BIA was inartful. Yes. Is there a part where the IJ says exactly this? Because I also found the IJ a bit hard to follow on this. Right, the IJ- opinion, but I still don't see anywhere where anyone in this agency says clearly, look, the first encounter, yes, like under our nexus case law, doesn't matter whether they understood the precise role and management structure of the person to whom she is related. It's enough that they picked her out and said at the time, I think you can get me thrown out of this building because of your family relationship. I just don't see an acknowledgement from the IJ that that would obviously satisfy our nexus case law. So I am concerned that no one in the agency is thinking about this exactly right yet. Right. No one in the agency is thinking about this with respect to time, the first part, and then so on and so forth. And I think there is nothing in this decision that breaks this down by moment by moment, right? Right. So my concern is that the IJ just also misapplied our nexus case law. Right. And finding that there was never any nexus at all. Right. Because he does ultimately find that he finds that the motivation is, and he gives this categorical statement with regard to the motivation. I think your honor is absolutely right. Do I think it needs to be remanded? I don't think so because it's essentially harmless. When you say absolutely right, you're saying absolutely right that they misapplied our case law? I'm not saying absolutely right that they misapplied the case law. I'm saying absolutely right to the comment that they didn't break this thing down moment by moment. And then in that very first moment say, look, the very first stop was motivated by a belief about that relationship. The evidence is very clear on that. That's compelled. I would concede that the reason why Oscar stops her the very first time on July of 2015, that he stops her because of that rumor and the belief that that's related to, that that's related to her or that's, that involves her relationship to Mr. Alivarengo. What I don't say is that necessarily requires this thing to and that it isn't a misapplication of this case law, of the nexus case law, because he doesn't threaten her until after she corrects him. Excuse me, your honor. Okay. So back to where we were. I do think it was that if there was a harm there, if he had harmed her before she had qualified and responded, then we'd be in a different place. But there's no threat. There's no action to threaten her until subsequent to that. And then I want to follow up on Judge Gregory's point, because I think it also answers this and why it's also homeless error. Let's assume that that first encounter he does, he doesn't believe her. He continues, he threatens her. The threat continues despite her statement and because of a belief that ultimately she can't get him thrown out. The thing is, is that he's not targeting her because of that. He's targeting her because she wants him gone. She's looking at someone who wants him. He's looking at her because she wants him gone. And even after he corrects her, he may still believe that she wants him gone. So let's step back and look at what, at least what it sounds like you've at least acknowledged. And that is that the BIA did not apply the nexus standard in the context of considering the intertwinement business or the imputation of principles here. And so that would lead us to say, well, that's legal error, because nexus is legal error in dealing with what you say is harmless. Because when you go beyond what they look back and consider those things, we as the appellate court can determine there was no harm from that error. Is that basically where you're going? I think there are two things there. I think there is a harmless error component. I also think that there's not an error because there wasn't a book. There isn't a nexus until he's until he persecutes her on account of right until there's persecuting a persecution on account of. And so given the timing, let me let me I'm just trying to trying to make sure I understand where I think. Right. I see where you're going with that. You're saying with the first one, there's really not that because you don't have the threat that accompanies it. And and then so you if you had that, you may have a different situation of intertwining. Correct. So you but but you'll believe that even the establishment of the familiar relationship in the first doesn't carry. I guess not possible from this perspective for it to be connected with the incident where there is a threat. And her status in terms of the familiar relationship hasn't changed. I mean, she's basically still who she is, but there I don't know. It seems like it's almost speculation as to why he does it. He doesn't like her, so to speak. I mean, I don't know where that comes from other than what happened. So I think it's all entirely speculation after sort of that first case, that first instance to some extent, because she does. She she disabuses of the notion very quickly that. She can do anything with respect to the having him evicted because of a relationship, and he never brings it up again. He never raises that again. He just says you're trying to get me thrown out the second time. And beyond that, there's never ever again a mention of you can have me evicted. It's just violence and threats. So the thing is, the question is. Does this persist and the immigration judge could say. I don't think it does. I don't think that's why he's motivated. And then going back to the underlying question, Judge Gregory, you early pointed out that she collected rents and just the mere fact that she was collecting rents could infer that she could have him thrown out, that she's doing this job is a basis for him to think, oh, you know, she could have me thrown out or alternatively. And this seems to be more of what the immigration judge is thinking. She's express. I've heard rumors that she wants me out. And maybe we don't think around here that if someone if your neighbor dislikes you, they're going to come and violently threaten you. Even if you can't do anything about it. Well, OK, there are circumstances where that happens, I assume. But I guess. But right. My comment was hypothetical, I guess, not paying rent because. Right. He did. He did. So he didn't pay rent. We don't know whether he was paying rent or wasn't, whether he was or not. We do know that she is collecting rent. So he could very well say, OK, fine, she's not the she's not related to the owners, but she's still collecting rent. She probably has some ability to control how things happen. Or alternatively, she just doesn't like me here. And I keep hearing the rumors. I don't like her and I want her out. All of these are plausible readings of the evidence based upon all of this. And so the immigration judge. So all of what you're saying is what is what the agency could have said or should have said. I think the immigration judge did say that on page 68 of the record. He expressly says, thus, the court can only find his little overstatement, but can only find that the motivation of Oscar in attempting to intimidate the respondent while he was in the building was simply out of personal animosity towards towards her because of the rumors that he had heard that she may be attempting to have him removed. That's it. That's the reason why the board, why the immigration judge says that's the motivation. That's what's going on here. Well, I mean, if that's if that's all the immigration judge had said. But in response to the actual statement, look, I'm doing this because you're related to the owners. Then the immigration says, well, that was a mistake. Like the husband wasn't really the owner. He was just the manager. And like. And also also he was never actually evicted. And I don't see how that helps if the account is supposed to be that a year later, he's still persecuting her because she wants him out of the building. The fact that he was never actually evicted. I mean, that makes that less plausible, not more. And so and then at the very end, the IJ says at most the record reflects that Oscar was upset that the respondent may have been attempting to use her position, which I assume is her relationship to influence the owner of the building to have her removed, which is effectively like saving the nexus. So I do want to say that when he's talking about the relationship, I suspect he may very well be talking about the relationship or the position when he's the position. The position could could very well mean just collecting the rents that that authority as the person who collects the rents at the at the apartment. But again, I understand the court's trepidation in this case, especially given that you have this initial encounter, which clearly is about, you know, in which he does clearly. Oscar clearly is referencing that relationship. But beyond that, I think the immigration judge's holds, I think as far as nexus, when the when the board is considering nexus or when the immigration judge is considering nexus to a harm. By that point, the immigration judge's determination is plausible. And as a result, that at least substantial evidence supports it. Yes, Your Honor. Let me just ask you one last question. It's just sort of a question. Yeah, sorry. And I guess I don't so and I totally understand this is not this case. What if we had the same IJ opinion and the BIA writes an opinion saying like, screw it, we don't we just disagree with the Fourth Circuit on nexus. We're not applying those cases. And given that we're going to go with, you know, our standard, which is different from the Fourth Circuit standard, we find no nexus here. So I'm just trying to imagine a case, not this case, where it is 100 percent clear that the agency's last word is incorrect. And then you have this IJ opinion, which, you know, maybe you can read different ways. What do we do if it were a thousand percent clear the BIA, the last word of the agency, that's legal error? Do we still usually go kind of searching around like, well, what the agency said was wrong, but we think we can discern. I know the cases you're talking about. Can we discern the agency's rationale? That wasn't really the agency's rationale. Pretty clear in that hypothetical you gave me that the agency's rationale was completely legal error. At that point, they send it back and they have to consider what the immigration judge actually said. So, but I don't believe that's the case. So you let the BIA go again. Right. Okay. All right. If this, you know, if this court has no further questions for me, again, substantial evidence supports the decision of the board. And I appreciate the time. Thank you. Thank you, Mr. Tennyson. Mr. Bannister, you have some time reserved. Thank you, your honors. Three, three quick points. First, I would point you to, well, a lot of was made about we had this first interaction and then Ms. Funia says, no, no, no, no, no, none of that's true. And then that's not said any later. I would point you to Kentianos, again, the case from 2017, where the petitioner told the persecutor, I have no intention of contacting the police regarding this issue. I'm never going to call the police. It's not going to happen. But then the persecution continues because obviously the persecutor did not believe them, did not trust them. But she stated for a fact right there, I'm not going to call the police. And I don't believe there's evidence she called the police. This court said that's sufficient. That's enough. She didn't have to show that on every other persecution, it was because she was the wife of the deceased. And in that case, the persecution spanned sporadic events over three years, I believe. Here, we're talking a period of six to eight months from the moment they're approached on the street to her leaving and being threatened, even though she's living an hour away. So I do not believe it. Does it matter here in this instance that, going back to the original question Judge Harris brought up to you, that the first encounter here, if we even accept it was a familiar relationship, there's really no clear threat here to make it a persecution. And it's one thing to say, well, it continues, the persecution continues. But from that perspective, it's just a familiar relationship. I mean, which you could probably say that occurs if you just say, okay, you're related. I do think there's two questions there. One, what's the motivation of the persecutor? Two, has something risen to the level of persecution? And it's a typical scenario where the persecution heightens and heightens and heightens. And I think that happened here. I think it's established at the outset, you are, you're related to the owner of the building, you can get me evicted, right? You can get me evicted. Those two things intertwine and the persecution ratchets up, right? We have guns pulled on her. We have death threats when she's not even living in the building. I would suggest death threats alone under this case's precedent, recent precedent, is sufficient to show persecution. And we've shown the motivation and we've shown direct evidence of that motivation that has been deemed credible, consistent, and reliable by the immigration judge. He just ignored her. And that's the problem. The record compels the contrary conclusion. And I think also there's been some questions about whether this is a legal question or a factual question. You know, this is an interesting question because in, again, the Kentianos case, the court notes that by too narrowly interpreting the nexus, ignoring this court's precedent, it is a manifest misapplication, a misapplication of the statutory nexus standard. That's legal language, right? That's a legal error. And I do believe that happened here. If you look at the immigration judge's opinion, you look at the BIA's opinion, there's no discussion or any review of whether these motivations could be intertwined. And I'm not sure we are at the point where, you know, we can make certain determinations as to what that first encounter was one way or the other. If we simply make a determination from your perspective that, well, it was not something that they considered, I don't know if we should then point to how it should be considered by the agency or even answer questions that maybe go beyond that. That is, is a familiar relationship alone enough to form an intertwining situation where you have, as you say, escalate, but there's a temporal element here as to when it did. But, you know, for you to get a remand on this, it seems to me you may be able to do so without us even going there if we simply determine this is not something they considered and then allow the BIA and the immigration judge or whomever do their job and kind of stay out of this whole business of whether it is or is not now. It's a cleaner case if you have the persecution occurs than that first encounter. Clear threat, familiar relationship, and then we move on and say, well, he comes back later on. But this has a lot of mixed facts in it and questions here that I'm you can find. So what do you think? I mean, at this point in time, if we simply remand for consideration, we don't have to go any further than to say you just didn't consider it. Is that right? Your Honor, I agree with that. And I think in the language of the standard review here, it's there's enough evidence that will compel the conclusion and they have to go back and consider it. Because, again, if you look at the transcript here, and Judge Harris pointed this out, the immigration judge keeps asking questions that are leading to his theory that it's just this personal animus. And Ms. Funiez keeps going, it's because he thinks I'm related. It's because he thinks I'm related because he thinks I'm related. And so her evidence that he deemed credible is not is not undermined. And we have to accept it as true. And so I do believe, Your Honor, that you can describe that as you just fail to consider these very clear facts, and it gets us into the same place. And just one last point is what did these two adjudicators actually say? The immigration judge said, there's no evidence, cannot find any evidence that family relationship played a part. And the BIA affirmed that fact under the chainery doctrine, which does apply in immigration cases. This court applied it recently in Jimenez Rodriguez. It's the last time Mr. Tennyson and I were here in the Fourth Circuit virtually. This court pointed that out and relied on it heavily. And there's no reason to stray from that precedent in this case, because the IJ and the BIA simply didn't consider these undisputed, credible facts. And that's why this quick case should be vacated and remanded for further proceedings. Thank you, Your Honors. Thank you so much, Mr. Vaness and Mr. Tennyson. We would love to come down and shake your hand, but we cannot. But know, nonetheless, that our sentiments are the same, and that is one of the appreciation. And thank you so much and wish you well and stay safe. Take care. Bye-bye.
judges: Roger L. Gregory, James Andrew Wynn, Pamela A. Harris